## James B. Curry, Plff. in Err., *v.* Mary J. Curry.

Where the plaintiff in ejectment claimed title through one who had received a deed, on condition of supporting the grantor, against a defendant in whose favor the grantor, subsequent to the execution of his deed, had confessed a judgment under which the land had been sold and purchased by the judgment plaintiff, evidence was properly excluded, by which it was attempted to show that the judgment plaintiff's claim for domestic services performed for such grantor, and for which he had confessed the judgment, was excessive, by showing what it was worth for her brother to support the two children of his sister during the time the services were performed. Evidence was also properly excluded of the judgment defendant's declaration made in the absence of the judgment plaintiff, and subsequent to the confession of judgment, that such confession was fraudulent and that the judgment plaintiff knew it. Similar declarations of the judgment defendant prior to the confession of judgment, in connection with the admissions of the judgment plaintiff herself, as sworn to in a certain deposition of a third party, that she had no claim, were also properly excluded.

An instruction to the jury, that in determining the amount that was due the judgment plaintiff, at the time the confession of judgment was given, by estimating the value of her services per week, they could allow to the judgment plaintiff simple interest upon that amount from the end of each year, was proper.

(Argued October 12, 1887.   Decided October 31, 1887.)

October Term, 1887, No. 197, W. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ.   Error to the Common Pleas of Mercer County to review a judgment in favor of the defendant in an action of ejectment.   Affirmed.

This action was brought by James B. Curry against Mary J. Curry, to recover possession of a parcel of land situated in Deercreek township, Mercer county.

It was admitted that the title to the land was in William H.

---

Cited in Witmer v. Eshleman, 18 Lanc. L. Rev. 329, holding that the mere fact that a father is indebted at the time of a voluntary conveyance to a child does not make the conveyance *ipso facto* fraudulent and void.

NOTE.—This is the second action of ejectment, the first being reported in 114 Pa. 367, 7 Atl. 61.

Curry, prior to April 17, 1875, on which day he made a deed of the land to his sister-in-law, Rachael Curry, for the consideration of his future maintenance. Rachael Curry and her husband, on April 2, 1879, deeded the land to the plaintiff, James B. Curry, he undertaking the performance of the obligation for the maintenance of William.

In 1879 the present defendant, Mary J. Curry, a sister of William H. Curry, brought suit against William on a claim for services rendered him as a domestic servant from 1857 to January 1, 1875, in which action William H. Curry confessed judgment in 1880, for $2,500. Upon that judgment an execution was issued, the property in suit was levied upon and sold by the sheriff, and bought by Mary J. Curry, and a sheriff's deed given to her, under which she claims title in this action.

The plaintiff herein claimed that this judgment was a fraud upon him, and a collusion between William and Mary to defraud him out of the land; that there was no agreement to pay wages to Mary; that whatever services she rendered William while living in his house were rendered in the family relation and not as a servant, and were therefore gratuitous; and further, that the amount of the judgment is largely in excess of what her services were worth.

The same questions have been once before tried, in an action of ejectment brought by the present defendant against the present plaintiff, which resulted in a verdict and judgment in favor of the present defendant, which judgment was affirmed by the supreme court, in November, 1886, the case being reported in 5 Central Reporter, 495.

While living in William's house, Mary had two natural children, who continued to live there with her.

On the trial, plaintiff proposed "to prove by one T. C. Cochran, to be followed by other witnesses, what it was worth to support the two children of Mary Jane Curry during the time she claims for alleged services rendered to William H. Curry (and thus to counteract or rebut the claim she puts in for services during that time), and also to show that the judgment confessed for so large an amount was fraudulent as against the plaintiff in this case."

Objected to by the defendant as incompetent and irrelevant. Objection sustained. 1

Plaintiff proposed to ask Joshua Meyers, a witness, "as to a

conversation that he had with William Curry since the trial of the last case, in which conversation he (William Curry) told witness that he did not owe Mary Jane Curry anything; that he had never agreed to pay her anything, and that the only reason that he did this was that he would rather she would get the property than Jim Curry; to be followed by other witnesses, to whom he declared that he did not owe Mary Jane one cent, but that he would have to give a judgment against himself in order to cut out Jim, and that he and Mary understood each other; and another conversation with William Curry in which, after he had confessed judgment, he said there would have been nothing of this if it had not been for persons upon the hill, referring to Mary Jane Curry; and also, by another witness, the following statement by William: 'She said she was after me and stated she could do nothing as long as I stood in the way and if I would sign my claim over to her that she would go snuks with me and then she could set him (Jim) out.' "

Objected to by defendants as incompetent and irrelevant, for the reason that the declarations proposed to be proven by the plaintiff as having been made by William H. Curry were made, according to the offer, subsequent to the confession of judgment and in the absence of Mary Jane Curry, the defendant. Objection sustained. 2

Plaintiff thereafter renewed the offer "to prove declarations of William H. Curry to Joshua Meyers and others, as in said offer stated, and also to prove that prior to the confession of judgment by William H. Curry to Mary J. Curry, he had a conversation with Joshua Meyers in which he (William H. Curry) stated to him (Meyers) that he thought of confessing this judgment to Mary Jane Curry for the purpose of defeating James B. Curry, and asked him (Meyers) his advice and counsel in regard thereto; and this, offered in connection with the admission of Mary Jane Curry herself, as sworn to in the deposition of Seymour Williams, that she had no claim there and that she never was to get anything there."

Objected to by defendant as incompetent. Objection sustained. 3

The court, McMICHAEL, P. J., charged the jury, *inter alia,* as follows:

"There is another thing that you should take into considera-

tion, and that is that she would be reasonably entitled to interest upon the money that would be due to her from time to time. This, of course, is now upon the assumption that you conclude that there would be anything due to her. I made a hasty, therefore, perhaps, not absolutely correct, calculation, or two of them —indeed three of them. If we were to assume that Mary's services were reasonably worth $1 per week, and we were to extend that over a period of twenty-one years prior to 1875, and count interest on the sum, $52, from the end of each year up to the time of confessing this judgment—I mean simple interest, not compound—the sum due her at the time of confessing this judgment would be about $2,135. If we were to assume that her services were worth $1.50 per week during that time, and count simple interest from the end of each year up to the time of confessing this judgment, the amount due to her then would be about $3,200. If we were to assume that her wages should be, say $60 per year, or nearly $1.15 per week during that time—continuously, I mean, during that time—and in a like manner count simple interest from the end of each year up, the amount due to her at the time of the entering of this judgment would be about $2,470. Now, I do not mean that you shall adopt any such view. I only give these as suggestions, and I do not intend to indicate to you that you should take them, but they are only suggestions of the way you may look at it, not the way you must look at it. That is exclusively for you." 4

The jury rendered a verdict for the defendant, and judgment having been entered thereon, plaintiff took this writ, assigning for error the action of the court in overruling the offers of testimony above set forth, and the portion of the charge above given, as indicated by exponents.

*J. A. Stranahan* and *R. A. Stewart,* for plaintiff in error.— This brief, although containing few authorities, seems necessary to explain the grounds of alleged error.

When William had supported Mary Jane and her two girls for years, and then insisted upon giving them the farm for the privilege, the plaintiff contended that the act could, in the very nature of things, be nothing less than an attempt at fraud by both. To rebut the idea that wages were honestly offered by William and demanded by Mary Jane, the plaintiff asked to

prove what it was worth to board and clothe these two illegiti-
mate girls.

This the plaintiff contends he had the right to do. It is idle
to cite authorities to show that great latitude must be allowed
in the admission of circumstantial evidence to prove a fraud,
even if it were necessary to invoke that principle. It is part
of the *res gestœ.* The testimony was clearly pertinent; its
weight was for the jury.

The second assignment of error goes to the court's rejection
of William's declarations (made in the absence of Mary and
subsequent to the confession of judgment) that it was fraudu-
lent in fact and that Mary knew it. The third assignment
couples with the second, declarations of William Curry of sim-
ilar import, made prior to the confession.

In actions of conspiracy evidence of the declarations of either
party is received after consent of action and design has been
proved. Kinzer v. Mitchell, 8 Pa. 66; Jackson v. Summerville,
13 Pa. 369.

In Hartman v. Diller, 62 Pa. 43, SHARSWOOD, J., says: "As
a general principle, it is undoubtedly well established that the
declarations of a grantor made after the execution of the grant
cannot be made use of for the purpose of impeaching it." But
he immediately adds that this is modified so as to admit such
declarations when the bona fides of the transfer is attacked.

The fourth error assigned is the vicious calculation by the
court in its charge, and the misleading comments on this ques-
tion immediately preceding them.

The statement of claim in Mary's action for services is "from
the year A. D. 1857 to the first of January, 1875, in all twen-
ty-two years, and that the said service was worth $104 per year.
So that the amount of her claim for said service against the said
William Curry is $2,288, with interest from January 1st, A. D.
1875."

The plaintiff claimed that the judgment showed in itself that
it was given for a trumped-up amount, made large enough to
carry the farm; that it was fraudulent because judgment con-
fessed voluntarily by an insolvent and indebted man for more
than is due is prima facie fraudulent within the statute of 13
Elizabeth, chap. 5, and that the calculation was loose and in-
correct for that reason; that the whole thing was put in this
shape, on a pretended calculation, merely to give color to the

claim. The court assumes here that it is regular and goes to work to figure that plausible which the parties themselves had neglected to do. He counts from 1854 to 1875. No reason for this and no date in 1854 was given, but he begins January 1, and calls it twenty-one years; she counts twenty-two. He counts interest from the end of each year, in order to more than double the result; whereas Mary's claim was for interest from January 1, 1875. He assumes everything regular, honest, and fair, and that the only question is one of fair wages, and a careful mathematical calculation of interest for every day of the twenty-one years.

The whole assumption is on the good faith of the entire transaction, and an attempt to make what is inconsistent look plausible and fair.

*Miller & Gordon* for defendant in error.

PER CURIAM:

There are four assignments of error in this case, neither of which can be sustained. The rulings in the case throughout were correct, and the judgment just.

The judgment is affirmed.